UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| FOREST SERVICE EMPLOYEES FOR ENVIRONMENTAL ETHICS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, and UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>Defendants. | NO: 2:16-CV-0293-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
|---|---|

BEFORE THE COURT are Plaintiff Forest Service Employees for Environment Ethics' Motion for Summary Judgment (ECF No. 14) and Motion for Judicial Notice (ECF No. 17); Defendants United States Forest Service and the United States Department of Agriculture's Cross-Motion for Summary Judgment (ECF No. 22); and Lake Wenatchee Fire & Rescue's Motion for Leave to File *Amicus Curiae* Brief (ECF No. 26). The motions were submitted for consideration

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

without oral argument. The Court has reviewed the motions and the record, and is fully informed.

For the reasons discussed below, Defendants' Motion for Summary Judgment (ECF No. 22) is **GRANTED** and Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's Motion for Judicial Notice (ECF No. 17) is **DENIED AS MOOT**, as the untimely submitted documents are immaterial to the Order. Lake Wenatchee Fire & Rescue's Motion for Leave to File *Amicus Curiae* Brief (ECF No. 26) is **DENIED**.

## BACKGROUND[1]

The instant suit arises out of the Forest Service's attempt to stop the "Wolverine Fire." The Wolverine Fire was ignited by lightning on June 29, 2015, on a ridgetop in the Chelan Ranger District of the Okanogan-Wenatchee National Forest, in Chelan County, Washington. ECF No. 23 at 2, ¶ 1. The conditions were such that fighting the fire directly was not feasible, and firefighters were withdrawn from the area due to risk of injury. ECF No. 23 at 2, ¶¶ 2-3. The fire

---

[1] The underlying facts are not disputed. The crux of Plaintiff's complaint relates to the underlying regulations, not the propriety of the community protection line, so the facts are merely recited for context, but are ultimately immaterial to the disposition of the case.

quickly grew in severity and complexity—by August 16, 2015 the fire was approximately 40,500 acres in size (over 63 square miles), and then grew to 62,000 acres (nearly 100 square miles) by August 27, 2015. ECF No. 23 at 4, ¶¶ 13, 18.

The Forest Service first two attempts to contain the fire were unsuccessful, as the fire escaped both containment lines on August 1 and August 17, 2015. ECF No. 23 at 3-4, ¶¶ 10, 14. From August 17 through August 31, 2015, the fire spread south at a rate of one to three miles per day. ECF No. 23 at 4, ¶ 15. By the end of August, the Incident Management Team assigned to the fire, after considering the lack of natural barriers, extreme fuel loading, absence of adequate safety zones, and severity of the fire, decided a Community Protection Line (CPL) was necessary in order to protect life, property, and resources. ECF No. 23 at 4, ¶ 20.

On August 30, 2015 the Forest Service began constructing the CPL, describing the CPL as an approximately 20-mile long contingency line consisting of a roughly 300 foot wide thinning of vegetation to "allow safe and efficient firefighting with a good chance of stopping forward spread of the fire." See ECF No. 23 at 5, ¶¶ 22-24. The CPL project was near completion when the Forest Service halted construction after rain showers slowed the fire. See ECF No. 23 at 6, ¶¶ 29-33.

Plaintiff Forest Service Employees for Environmental Ethics initiated this suit against Defendants United States Forest Service and United States Department

of Agriculture on August 16, 2016—well after the construction of the CPL—complaining that the CPL was constructed without complying with the National Environmental Protection Act (NEPA). The parties filed cross-motions for summary judgment on this issue, and these motions are now before the Court.

## STANDARD OF REVIEW

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

Only admissible evidence may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). Per Rule 56(c), the parties must support assertions by: "citing to particular parts of the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." The nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings, *Liberty Lobby*, 477 U.S. at 248, or by providing a mere "scintilla of evidence[,]" *id*. at 252.

Although courts generally must view the facts and justifiable inferences in favor of the nonmoving party, *id.*, courts have more leeway when the case will not be sent to a jury:

> [W]here the ultimate fact in dispute is destined for decision by the court rather than by a jury, there is no reason why the court and the parties should go through the motions of a trial if the court will eventually end up deciding on the same record. However, just as the procedural shortcut must not be disfavored, courts must not rush to dispose summarily of cases—especially novel, complex, or otherwise difficult cases of public importance—unless it is clear that more complete factual development could not possibly alter the outcome and that the credibility of the witnesses' statements or testimony is not at issue.

*TransWorld Airlines, Inc. v. Am. Coupon Exch., Inc.*, 913 F.2d 676, 684-85 (9th Cir. 1990).

## DISCUSSION

Plaintiff's Motion for Summary Judgment (ECF No. 14) seeks redress under the Administrative Procedures Act (APA). Plaintiff asserts: (1) Defendants violated the procedural requirements of the National Environmental Policy Act (NEPA) in constructing the CPL, reasoning NEPA does not have a "waiver" for emergency actions and the Forest Service did not seek "alternative arrangements"

as is required for emergency actions; and (2) even if 36 C.F.R. § 220.4(b)—the regulation purporting to allow the Forest Service to take emergency actions— satisfies the "alternative arrangement" requirement under NEPA, the Forest Service did not follow the procedural requirements of said regulation. ECF No. 14 at 2-3. Plaintiff does not raise any specific complaint about the propriety of the CPL otherwise, such as whether the decision to construct the CPL was arbitrary.[2]

As discussed below, the Forest Service satisfied NEPA, which allows for "alternative arrangements" in cases of emergencies, because 36 C.F.R. § 220.4(b) fulfills the "alternative arrangement" requirement and the Forest Service complied with the required procedures. Accordingly, Defendants are entitled to summary judgment.

I. **36 C.F.R. § 220.4(b) Complies with NEPA**

Plaintiff's argument that Defendants violated the procedural requirements of NEPA in constructing the CPL is two-fold: (1) Plaintiff argues there is no exception for emergencies; and (2) even if there is an exception, the Forest Service

---

[2] Defendant argues the case is moot and barred by the statute of limitations. The Court need not address these issues because it is granting Defendants' Motion for Summary Judgment on other grounds.

failed to pursue "alternative arrangements" as required by regulation. Plaintiff's arguments fail.

NEPA requires all agencies of the Federal Government to consider the environmental impact and file public reports relaying such before taking major federal actions significantly affecting the quality of the human environment "to the fullest extent possible[.]" 42 U.S.C. § 4332.

> When the Government conducts an activity, "NEPA itself does not mandate particular results." Instead, NEPA imposes only procedural requirements to "ensur[e] that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts."

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008) (internal citations omitted; bracket in original). According to the Supreme Court:

> NEPA has twin aims. First, it "places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action." Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process. Congress in enacting NEPA, however, did not require agencies to elevate environmental concerns over other appropriate considerations. Rather, it required only that the agency take a "hard look" at the environmental consequences before taking a major action. The role of the courts is simply to ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious.

*Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97–98 (1983) (internal citations omitted).

//

A. NEPA allows for "alternative arrangements" in cases of emergency

Plaintiff argues: "Just as NEPA contains no national security exception, it also does not waive 'emergency' federal action[s]." ECF No. 14 at 11-12 (citing *San Luis Obispo Mothers for Peace v. NRC*, 449 F.3d 1016, 1035 (9th Cir. 2006)). However, even if not characterized as a waiver, NEPA allows an agency to make alternative arrangements in emergency situations without complying with the ordinary, burdensome reporting requirements.

"The Council of Environmental Quality (CEQ), established by NEPA with authority to issue regulations interpreting it, has promulgated regulations to guide federal agencies in determining what actions are subject to that statutory requirement." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004). Pertinent to this case, CEQ promulgated the following regulation allowing for agencies to make alternative arrangements when facing an emergency:

> Where emergency circumstances make it necessary to take an action with significant environmental impact without observing the provisions of these regulations, the Federal agency taking the action should consult with the Council about alternative arrangements. Agencies and the Council will limit such arrangements to actions necessary to control the immediate impacts of the emergency.

40 C.F.R. § 1506.11. "CEQ's interpretation of NEPA is entitled to substantial deference." *Andrus v. Sierra Club*, 442 U.S. 347, 358 (1979).

//

Plaintiff does not directly challenge the propriety of the regulation[3], and there is nothing to suggest 40 C.F.R. § 1506.11 is invalid or *ultra vires*. Rather, the regulation puts substance to the notion that it may not be possible to fully comply with NEPA, as NEPA contemplates. *Compare* 42 U.S.C. § 4332 (mandate to comply with NEPA "to the fullest extent possible"), *with* 40 C.F.R. § 1506.11 (specifically recognizing "emergency situations" may "make it necessary to take an action . . . without observing the provision . . . ."). This aligns with common sense—complying with burdensome reporting in the face of an emergency is generally not feasible or prudent. *See* https://energy.gov/lpo/nepa-faqs ("The average timeline for an environmental assessment is generally six to nine months, and for an environmental impact statement around 18-24 months.").

B. <u>36 C.F.R. § 220.4(b) fulfills "alternative arrangement" requirement</u>

Plaintiff recognizes an agency may follow "alternative arrangements" in emergency situations, but complains that "the Forest Service did not avail itself of that process here." ECF No. 14 at 8. The Forest Service argues 36 C.F.R. § 220.4(b) fulfills the alternative arrangement requirement. The Forest Service is

---

[3] Plaintiff recognizes "NEPA's implementing regulation[], 40 CFR § 1506.11, [allows] for 'alternative arrangements' for agency actions taken in response to emergencies[.]" ECF No. 14 at 8.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

correct. The relevant portion of the regulation states:

> (b) Emergency responses. When the responsible official determines that an emergency exists that makes it necessary to take urgently needed actions before preparing a NEPA analysis and any required documentation in accordance with the provisions in §§ 220.5, 220.6, and 220.7 of this part, then the following provisions apply.
>
>> (1) The responsible official may take actions necessary to control the immediate impacts of the emergency and are urgently needed to mitigate harm to life, property, or important natural or cultural resources. When taking such actions, the responsible official shall take into account the probable environmental consequences of the emergency action and mitigate foreseeable adverse environmental effects to the extent practical.

36 C.F.R. § 220.4(b)(1). The Forest Service must otherwise consult with the CEQ for any action not described in paragraph (b)(1). 36 C.F.R. § 220.4(b)(2)-(3).

Of special import, the CEQ formally approved 36 C.F.R. § 220.4(b) as complying with NEPA. ECF No. 22 at 23; *see* R6330 (CEQ formally acknowledging 36 C.F.R. § 220.4 complies with NEPA). NEPA established the CEQ in part, "to review and appraise the various programs and activities of the Federal Government . . . for the purpose of determining the extent to which such programs and activities are contributing to the achievement of [NEPA's policies] . . . ." 42 U.S.C. § 4344. "CEQ's interpretation of NEPA is entitled to

substantial deference."[4] *Andrus v. Sierra Club*, 442 U.S. at 347.

Plaintiff argues[5] that "CEQ cannot 'grant broad-sweeping exceptions to the EIS process for routine agency activity[,]'" reasoning that doing so "directly conflicts and subverts NEPA's directive that agencies comply with their NEPA duties 'to the fullest extent possible.'" ECF No. 24 at 7-8 (quoting *Nat. Res. Def. Council v. Winter*, 527 F.Supp.2d 1216, 1231 (C.D. Cal. 2008)).

First, contrary to Plaintiff's contentions, there is nothing routine—*i.e.* there is no regular or repeated procedure—about fighting individual fires that create an emergency situation, as each fire is accompanied by its own unique complexities and dangers. This is much different than in *Winter*, where the underlying action was a routine military training exercise planned in advance. *Nat. Res. Def. Council v. Winter*, 527 F. Supp. 2d at 1228. Importantly, the regulation does not exempt non-emergency wildfire prevention actions, and the regulation is limited to actions necessary to protect life, property, and important resources. 36 C.F.R. § 220.4(b)(1).

---

[4] Plaintiff argues the Court should not give the CEQ letter deference. ECF No. 24 at 9. Irrespective, the Court agrees with the conclusion in the letter.

[5] Plaintiff's argument references 40 C.F.R. § 1506.11, but the argument is directed toward 36 C.F.R. §220.4(b). *See* ECF No. 24 at 7-9.

Second, the procedures implemented under 40 C.F.R. § 1506.11 and 36 C.F.R. § 220.4(b) do not subvert NEPA's directive that all agencies comply with NEPA "to the fullest extent possible." Importantly, the regulations only apply in emergency situations—exigent circumstances make compliance not possible or feasible so the regulations compliment, rather than contradict, NEPA. Further, the purpose of NEPA is to require a "hard look"[6] at the environmental impact. 36 C.F.R. § 220.4(b) complies with this by requiring—even for an emergency—"the responsible official [to] take into account the probable environmental consequences of the emergency action and mitigate foreseeable adverse environmental effects to the extent practical." 36 C.F.R. § 220.4(b).

Moreover, 36 C.F.R. § 220.4(b) complies with the bounds established under 40 C.F.R. § 1506.11, which limits the use of "alternative arrangements" to the "actions necessary to control the immediate impacts of the emergency." 40 C.F.R. § 1506.11. The Forest Service regulation falls neatly within this boundary because officials may only "take actions necessary to control the immediate impacts of the

---

[6] In reviewing NEPA compliance, the "court's role is to ensure that the agency has taken a 'hard look' at environmental consequences." *Columbia Basin Land Prot. Ass'n v. Schlesinger*, 643 F.2d 585, 592 (9th Cir. 1981) (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 410 n.21 (1976)).

emergency and are urgently needed to mitigate harm to life, property, or important natural or cultural resources . . . ." 36 C.F.R. § 220.4(b). Any other action requires the Forest Service to go through the CEQ. *See* 36 C.F.R. § 220.4(b)(2)-(3).

In sum, 36 C.F.R. § 220.4(b) is a prospective, successful attempt to delineate the alternative arrangements required to comply with NEPA. Notably, this is not the only one of its kind, despite Plaintiff's contention otherwise.[7]

## II. Forest Service complied with 36 C.F.R. § 220.4

Under 36 C.F.R. § 220.4(b), the Forest Service may circumvent the traditional NEPA process if: (1) a "responsible official" determines "an emergency exists that makes it necessary to take urgently needed actions before preparing a NEPA analysis[,]" and (2) the action is "necessary to control the immediate impacts of the emergency and are urgently needed to mitigate harm to life, property, or important natural or cultural resources[.]" When taking such actions, the "responsible official [must] take into account the probable environmental

---

[7] *See, e.g.*, 33 C.F.R. § 230.8 (U.S. Army Corps of Engineers), 43 C.F.R. § 46.150 (U.S. Department of the Interior); 7 C.F.R. § 1970.18 (Rural Business Cooperative Service, the Rural Utility Services, and the Rural Housing Service, and 32 C.F.R. § 989.34 (U.S. Air Force).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

consequences of the emergency action and mitigate foreseeable adverse environmental effects to the extent practical." 36 C.F.R. § 220.4(b).

Plaintiff argues that the Forest Service did not comply with 36 C.F.R. § 220.4(b) because there was no declaration of an emergency and fires do not create emergencies. ECF No. 14 at 14-17. Plaintiff does not otherwise challenge the Forest Service's compliance with 36 C.F.R. § 220.4(b).[8]

Defendants have demonstrated that the responsible official[9] determined an emergency existed. ECF No. 22 at 11 (citing ECF No. 22-1). Defendants assert—and support with an uncontested affidavit—that:

> The Forest Service's responsible official appropriately determined that an emergency existed requiring urgently needed action. The Forest Supervisor, Michael R. Williams, was the responsible official who determined that the severity, location, and forecasted growth of the fire constituted an emergency that made it necessary to take urgently needed action.

---

[8] Plaintiff's complaint focuses on the procedure, not the substance, required for constructing the CPL. ECF No. 24 at 11 ("While there are substantial questions that could be raised about the wisdom and credibility of the Forest Service's CPL logging decision . . . those matters [are] not at issue in this litigation.").

[9] The responsible official is "[t]he Agency employee who has the authority to make and implement a decision on a proposed action." 36 C.F.R. § 220.3.

ECF No 22 at 11. Plaintiff has not rebutted this contention, but merely complains—without citations—that the declaration is insufficient since the determination was not in the administrative record. *See* ECF No. 24. This bare complaint, without citation, is insufficient to question Defendant's assertion. *Liberty Lobby*, 477 U.S. at 248 (the nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings).

Plaintiff also argues that a wildfire in Central and Eastern Washington does not fall under the "common sense, dictionary definition of emergency." ECF No. 14 at 3. Plaintiff reasons that such fires are certain and are thus not unforeseen. ECF No. 14 at 14. Plaintiff's argument that a wildfire is not an emergency is without merit and contrary to common sense. Just because wildfires are common and their general existence is foreseeable, the danger created by any specific wildfire is not so foreseeable and can create an emergency situation with little or no forewarning. For example, in this case, the Wolverine Fire was started by lightning and spread quickly. The fire moved as fast as three miles per day, was threatening several communities, and had breached two containment lines. This clearly constitutes an emergency.

III. **Proposed *Amicus Curiae* Brief**

The Court has broad discretion to grant or refuse a prospective *amicus* participation. *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982),

*abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). *Amicus* may be either impartial individuals or interested parties. *See Funbus Sys., Inc. v. Cal. Pub. Utils. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986). In deciding whether to grant leave to file an *amicus* brief, courts should consider whether the briefing "supplement[s] the efforts of counsel, and draw[s] the court's attention to law that escaped consideration." *Miller-Wohl Co., Inc. v. Comm'r of Labor & Indus. Mont.*, 694 F.2d 203, 204 (9th Cir. 1982). "An *amicus* brief should normally be allowed when . . . the *amicus* has an interest in some other case that may be affected by the decision in the present case, or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide. . . . Otherwise, leave to file an *amicus curiae* brief should be denied." *Cmty. Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy*, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (internal citations omitted).

Lake Wenatchee Fire & Rescue's brief and accompanying declaration offer no additional legal, or other substantive information or perspective that has not already been represented to the Court in this matter of administrative review. As such, while the Court appreciates the position represented by the Lake Wenatchee Fire & Rescue, that position is fully represented in Defendants' briefing, and the motion for leave to file is denied.

## CONCLUSION

Defendants have demonstrated there is no genuine issue of material fact and Plaintiff's claim fails as a matter of law.

**ACCORDINGLY, IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (ECF No. 22) is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

3. Plaintiff's Motion for Judicial Notice (ECF No. 17) is **DENIED AS MOOT**.

4. Lake Wenatchee Fire & Rescue's Motion for Leave to File *Amicus Curiae* Brief (ECF No. 26) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

**DATED** July 11, 2017.



THOMAS O. RICE
Chief United States District Judge